Cite as 2021 Ark. 219

# SUPREME COURT OF ARKANSAS
No. CV-21-279

| | |
|---|---|
| | **Opinion Delivered:** December 2, 2021 |
| JENNIFER RIVERA-CEREN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED <br><br> APPELLANT <br><br> V. <br><br> PRESIDENTIAL LIMOUSINE AND AUTO SALES, INC. <br><br> APPELLEE | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-19-957] <br><br> HONORABLE LYNN WILLIAMS, JUDGE <br><br><br> REVERSED AND REMANDED. |

**COURTNEY RAE HUDSON, Associate Justice**

In this interlocutory appeal, appellant Jennifer Rivera-Ceren, on behalf of herself and all others similarly situated, appeals from the circuit court's denial of her motion for class-action certification in her suit against appellee Presidential Limousine and Auto Sales, Inc. ("Presidential"). For reversal, Rivera-Ceren argues that the circuit court abused its discretion by denying her motion. We reverse and remand.

On August 22, 2018, Rivera-Ceren entered into a retail installment contract with Presidential to finance the sale of a 2003 Jeep Liberty. Presidential repossessed the vehicle and sent Rivera-Ceren a "Mandatory Notice of Private or Public Sale" ("Notice") on June 20, 2019. The Notice informed Rivera-Ceren that the vehicle would be sold at a public sale on or after June 30, 2019, and that she would be liable for any remaining deficiency in the event

the vehicle did not sell for an amount sufficient to satisfy the total outstanding indebtedness. The Notice further indicated that Rivera-Ceren could redeem the property by "paying the amount due and unpaid on your obligation, with interest accruing at the rate of 9.5% per day[.]"

On July 23, 2019, Rivera-Ceren filed a class-action complaint against Presidential alleging that the Notice failed to comply with the Uniform Commercial Code ("UCC") and Arkansas law because it did not disclose that she was entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting as required by Arkansas Code Annotated sections 4-9-613(1)(D) and 4-9-614(1)(A) (Repl. 2020). She further claimed that the 9.5 percent per-day interest rate, in addition to the underlying obligation that must be paid to redeem the collateral, violated Arkansas Code Annotated section 4-9-623, the Arkansas Deceptive Trade Practices Act ("ADTPA"), and the Arkansas Constitution's prohibition against usurious interest rates. Rivera-Ceren sought injunctive relief and damages on behalf of herself and each member of the class.

In its answer, Presidential admitted that the Notice sent to Rivera-Ceren could have been construed as requiring interest over and above the installment-contract rate but claimed that this was not Presidential's actual intent. Presidential further admitted that the Notice provided did not comply with Arkansas law but alleged that Rivera-Ceren was not harmed by the omission because she had already been provided with this information prior to receiving the Notice. In addition, Presidential asserted that it had not made any attempt to collect a deficiency from Rivera-Ceren.

Following discovery, Rivera-Ceren filed a motion for class certification on September 14, 2020. Her proposed class definition included those Arkansas consumers who, in the five years preceding the filing of the complaint (a) have or had a retail installment contract held by Presidential under which personal property was held as collateral; (b) had their personal property repossessed by Presidential or its agents; and (c) were sent a post-repossession notice that failed to disclose the consumer's right to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting.[1] Rivera-Ceren argued that all of the elements required for class certification pursuant to Arkansas Rule of Civil Procedure 23 had been met in this case. She noted that, according to Presidential's responses to interrogatories, approximately 200 vehicles were repossessed during the five-year time period referenced in the class definition, and after each repossession, one of the three form notices provided during discovery would have been sent to the consumer. She argued that the common, as well as the predominant, issue to be decided on behalf of the class was whether the repossession notices sent to those borrowers violated the UCC because the notices did not inform the consumer that he or she was entitled to an accounting of their indebtedness. Rivera-Ceren also claimed that the UCC provides a uniform formula for calculating damages for noncompliance and that there were no individualized issues preventing class certification. She further asserted that her claims were typical of the class members, that she and her

---

[1]Rivera-Ceren explained that, based on Presidential's discovery responses, she had narrowed the class definition from that set forth in her complaint and was not currently seeking class certification on the claims involving an unlawful or usurious interest rate.

3

counsel would fairly and adequately represent the class, and that a class action was superior to other available methods to resolve the controversy.

In its response opposing the motion for class certification, Presidential admitted that its notice of sale failed to notify Rivera-Ceren of her right to an accounting. However, Presidential claimed that it had previously given her an accounting of her payments toward her indebtedness when she brought the vehicle in for repairs before it was abandoned and then repossessed. According to Presidential, this made Rivera-Ceren's situation unique and caused her to receive a different notice than other debtors. Presidential argued that a majority of the notices sent after repossession were not identical to Rivera-Ceren's and that she had therefore failed to meet the elements of numerosity, commonality, and typicality. Presidential also contended that the proposed class was not sufficiently numerous because (1) the class period should have been three years instead of the five-year period applicable to a breach of contract claim based on the relief requested in the complaint; and (2) the potential class members cited by Rivera-Ceren failed to account for those instances wherein strict foreclosure was used, the debtor redeemed the collateral after notice, the debtor surrendered the collateral due to a bankruptcy filing, or the debtor voluntarily surrendered the collateral without notice to the defendant.

Rivera-Ceren filed a reply disputing Presidential's contention that class certification was not appropriate. She stated that the numerosity requirement was satisfied because approximately 200 vehicles had been repossessed during the proposed class period and at least two of the three versions of the repossession notices sent to those consumers did not

4

include any mention of an accounting. Rivera-Ceren argued that Presidential cited no authority for its assertion that the class period should be limited to three years instead of five, and she noted that the statute of limitations is four years for claims under the UCC and five years for ADTPA claims. With regard to Presidential's argument that her situation was not typical of the proposed class because she received an accounting of her indebtedness prior to the repossession, Rivera-Ceren contended that Presidential was confusing an accounting as required under the UCC with an estimate of the cost to repair her vehicle. She argued that while every repossession or voluntary surrender occurs under different circumstances, the common question presented on behalf of the class was whether Presidential complied with the UCC by not informing them in the notices of their right to an accounting.

Despite Rivera-Ceren's request for a hearing on her motion for class certification, no hearing on the issue was held. In an April 16, 2021 letter order, the circuit court stated that it was denying the motion for the reasons stated in Presidential's response and brief and instructed counsel to prepare an order to that effect. The order denying the motion for class certification was entered on April 27, 2021, and Rivera-Ceren filed a timely notice of appeal from this interlocutory order. She now argues on appeal that the circuit court abused its discretion by not certifying the class. Presidential did not file a brief in response.

Class certification of a lawsuit is governed by Arkansas Rule of Civil Procedure 23. *Vaughn v. Mercy Clinic Fort Smith Communities*, 2019 Ark. 329, 587 S.W.3d 216. There are six requirements for class-action certification under Rule 23: (1) numerosity, (2) commonality,

5

(3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Id.* In reviewing a circuit court's decision on whether to grant or deny class certification, we give circuit courts broad discretion and reverse only when the appellant can demonstrate an abuse of discretion. *Id.* When we review a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *GGNSC Arkadelphia, LLC v. Lamb ex rel. Williams*, 2015 Ark. 253, 465 S.W.3d 826. It is not appropriate for either this court or the circuit court to delve into the merits of the underlying claims at this stage, as it is immaterial whether the petition will succeed on the merits or whether it even states a cause of action. *Id.*

Presidential challenged only three of the Rule 23 requirements in its response to the motion for class certification––numerosity, commonality, and typicality—and the circuit court based its decision on the arguments made by Presidential. Rivera-Ceren therefore focuses on these three requirements on appeal.[2] We discuss each in turn.

---

[2]The dissent's argument that the appeal must be affirmed because the circuit court's order lacks sufficient findings and Rivera-Ceren's brief addresses only three of Rule 23's six requirements displays a misunderstanding of our precedent. Rule 23(b) mandates that "[a]n order *certifying* a class action must define the class and the class claims, issues, or defenses." (Emphasis added.) This rule does not require such findings by the circuit court when a motion for class certification is denied, and Arkansas Rule of Civil Procedure 52(a) states that findings of fact and conclusions of law are unnecessary on decisions of motions in the absence of a specific request by a party. Furthermore, we have remanded, not summarily affirmed, when the circuit court's order granting certification failed to contain sufficient findings. *E.g.*, *Agents Mut. Ins. Co. v. Benham*, 2020 Ark. 39, 591 S.W.3d 799; *Koppers, Inc. v. Trotter*, 2019 Ark. 134, 572 S.W.3d 372; *Industrial Welding Supplies of Hattiesburg, LLC v. Pinson*, 2017 Ark. 315, 530 S.W.3d 854.

In addition, our precedent holding that we must affirm where the appellant fails to address each of the independent and alternative bases for the circuit court's decision has no

A. Numerosity

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Ark. R. Civ. P. 23(a)(1) (2020). We have held that the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class and that the numerosity requirement may be supported by common sense. *Infinity Healthcare Mgmt. of Ark., LLC v. Boyd*, 2019 Ark. 346, 588 S.W.3d 22; *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008). We have declined to adopt a bright-line rule to determine how many class members are required to satisfy the numerosity requirement. *Boyd*, *supra*; *Bryant*, *supra*. We have affirmed a circuit court's finding that numerosity was lacking where the class totaled only seventeen members, *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981), but we have also affirmed a finding that numerosity was satisfied when the minimum class size was as few as thirty-six members. *Stephens Prod. Co. v. Mainer*, 2019 Ark. 118, 571 S.W.3d 905. When the question of numerosity is a close one, we err on the side of certification, as the circuit court always has the option to decertify the class later if it does not end up meeting the numerosity requirement. *Boyd*, *supra*; *Van Buren School Dist. v. Jones*, 365 Ark. 610, 232 S.W.3d 444 (2006).

---

application here. As noted above, Presidential challenged only three of Rule 23's requirements in its response, and the circuit court stated in its letter order that it was denying Rivera-Ceren's motion for the reasons argued in the response. Rivera-Ceren has addressed each of these three possible grounds for the circuit court's decision in her brief, and thus, we may decide her appeal on the merits.

Rivera-Ceren argues that Presidential's admission that approximately 200 consumers received one of the three repossession notices in the five years before she filed her class-action complaint is, by itself, sufficient to satisfy the numerosity requirement. We agree that, on the record before us, numerosity was established. Presidential claimed in its response to the motion for class certification that Rivera-Ceren inflated the number of potential class members because the applicable statute of limitations should be three years instead of five. However, this argument delves into the potential merits of the claims, which we have held is impermissible when reviewing a motion for class certification. *Boyd*, *supra*; *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999). In *Fraley*, we held that the circuit court erred when it improperly considered the merits of the appellee's affirmative defenses in determining that the numerosity requirement of Rule 23 had not been satisfied. The expiration of the statute of limitations is an affirmative defense under Arkansas Rule of Civil Procedure 8(c), and as such, certification challenges based on this defense are inappropriate. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000); *Fraley*, *supra*; *SEECO, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). Furthermore, as Rivera-Ceren asserts, even if the applicable class period is limited to three years, Presidential did not identify how many post-repossession notices it sent per year and only argued that this shorter period would "greatly reduce the potential members." Assuming an equal number of repossessions each year, approximately 120 debtors would have received the notices, a class that is still large enough to satisfy the Rule 23 numerosity requirement. *See Stephens*, *supra*.

Presidential also contended that numerosity failed because not all of the notices sent to debtors failed to comply with the UCC. However, Presidential asserted in its answers to discovery that it did not track which of the three versions of notices had been sent to each debtor, and in any event, Rivera-Ceren argued that none of the notices provided satisfy UCC requirements. Further analysis of each notice and the extent to which any of them adequately communicate the required information would involve a merits-based inquiry that is improper at this stage. Similarly, Presidential's claim that Rivera-Ceren failed to take into account the number of potential class members who had redeemed or voluntarily surrendered their collateral, or who had agreed to a strict foreclosure, is irrelevant to a determination of numerosity in this case. Rivera-Ceren's proposed class is defined only as those debtors who had personal property repossessed by Presidential and who were sent a post-repossession notice that failed to disclose their right to an accounting of the unpaid indebtedness and the charge, if any, for such an accounting. Based on the record presented to the circuit court, Rivera-Ceren has established a potential class that is sufficiently numerous to satisfy Rule 23. Again, the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class; we err on the side of certification, as the class can always be decertified later if needed. *Boyd*, *supra*. Accordingly, the circuit court abused its discretion in denying Rivera-Ceren's motion based on a lack of numerosity.

B. Commonality

Rivera-Ceren next contends that she satisfied Rule 23's commonality requirement. To certify a class, a circuit court must find that there are questions of law or fact common to the class. Ark. R. Civ. P. 23(a)(2) (2020). "When a class-action defendant 'has engaged in a course of conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all persons affected.'" *Boyd*, 2019 Ark. 346, at 8, 588 S.W.3d at 28–29 (quoting *Rosenow v. Alltel Corp.*, 2010 Ark. 26, at 6, 358 S.W.3d 879, 885). Rule 23(a)(2) does not require that all questions of law or fact be common; rather, there need only be a single issue common to all members of the class. *Id.* at 8–9, 588 S.W.3d at 29. We have held that commonality is satisfied where the defendant's acts, independent of any action by the class members, establish a common question relating to the entire class. *Rosenow, supra*.

In her motion for class certification, Rivera-Ceren claimed that the commonality requirement had been met in this case because Presidential engaged in standardized conduct toward members of the proposed class by mailing them form notices that did not comply with the UCC. She argues that Presidential sent all class members one of the three forms provided during discovery and that the principal and common legal issue to be decided is whether these form notices informed class members of their right to an accounting as required under the UCC, Ark. Code Ann. §§ 4-9-613(1)(D) and 4-9-614(1)(A).

Presidential responded to Rivera-Ceren's motion by asserting that "a great majority of the notices sent to debtors after repossession were not identical to that sent to Plaintiff and in fact met the requirements of the statute." Presidential further claimed that Rivera-

10

Ceren's situation was unique because she had been supplied with an accounting of her obligations, and she had abandoned the collateral, causing her to receive a different notification than other debtors. However, as Rivera-Ceren argues, the facts surrounding the receipt of her repossession notice have no bearing on the common question of whether Presidential's form notices comply with the UCC. Presidential supplied three sample form notices during discovery and indicated that one of these sample notices was sent to all debtors who had collateral repossessed during the relevant time period. As noted earlier, Presidential's contention that the majority of these notices were not the same as Rivera-Ceren's conflicted with its statement during discovery that it did not track which notices were sent to whom. Further, Rivera-Ceren claimed that all three versions of the sample notices were defective. Whether any of these notices meet the requirements of the UCC involves the merits of the claims and goes well beyond the procedural issue of whether Rivera-Ceren has demonstrated the existence of common questions of law or fact to be decided. *See Rosenow*, *supra* (holding that an attempt to raise defenses to defeat the requirement of commonality improperly delves into the merits of the case). Thus, the circuit court abused its discretion in refusing to certify the class based on the commonality requirement.

C. Typicality

The final Rule 23 requirement that was challenged by Presidential in its response to Rivera-Ceren's motion for class certification was typicality. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class[.]" We have held that the typicality requirement is satisfied if the class representative's

11

claim arises from the same wrong allegedly committed against the class. *Boyd*, *supra*. "Thus, a claim is typical if it arises from the same practice or course of conduct that gives rise to the claims of other class members and if the representative's claims are based on the same legal theory." *Boyd*, 2019 Ark. 346, at 10, 588 S.W.3d at 29.

Rivera-Ceren argues, as she did in her motion for class certification, that there is no difference in the theories of liability upon which she and the class members are proceeding because they are based on the same three form notices that she alleges fail to inform consumers of their right to an accounting as required by the UCC. She therefore contends that her claims are typical of those in her proposed class and that the circuit court abused its discretion in denying her motion.

We agree that Rivera-Ceren satisfied the typicality requirement. Her claims arise from the same wrong allegedly committed against the class, which is that the post-repossession notices sent to debtors failed to contain certain information required under the UCC. Presidential again asserted in its response that the notice provided to Rivera-Ceren was not typical of the notices received by other class members and that at least one of the three sample notices did contain the required language. Rivera-Ceren correctly asserts that these are merits-based arguments, and as discussed above, we do not delve into the merits of claims or defenses at the class-certification stage. *Boyd*, *supra*; *Rosenow*, *supra*. Because the circuit court abused its discretion in refusing to certify the class based on the record before it, we reverse the circuit court's order and remand for further proceedings.

Reversed and remanded.

WEBB, J., dissents.

**BARBARA W. WEBB, Justice, dissents.** I would have affirmed the circuit court's ruling on two separate bases. First, the appellant failed to bring up a record sufficient to demonstrate an abuse of discretion. When reviewing a class-certification order, we focus on the evidence contained in the record to determine whether it supports the circuit court's conclusion regarding certification. *Asbury Auto Group., Inc. v. Palasack*, 366 Ark. 601, 604, 237 S.W.3d 462, 465 (2006) (citing Ark. R. Civ. P. 23). Our law is well settled that the six requirements for class-action certification, as stated in Rule 23, are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Infinity Healthcare Mgmt. of Arkansas, LLC v. Boyd*, 2019 Ark. 346, at 6, 588 S.W.3d 22, 27 (citing *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008)). In addition to the requirements of Rule 23, the court must be able to objectively identify members of the class. *Id.* (citing *Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006)). The circuit court's order addresses none of these factors.

The circuit court is obligated to undertake enough of an analysis of the six elements to enable us to conduct a meaningful review of the certification issue on appeal. *SEECO, Inc. v. Stewmon*, 2016 Ark. 435, at 10, 506 S.W.3d 828, 836 (citing *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003)). At a minimum, this requires more than a cursory mention of the six criteria or bare conclusions that those criteria have been satisfied. *Id.* The circuit court cannot simply use a "rubber stamp" to approve or deny class certification. *Id.* However, when a party fails to request specific findings of fact on Rule 23 elements or file a

13

motion pursuant to Ark. R. Civ. P. 52, it waives the lack of specific factual findings on appeal. *The Money Place, LLC v. Barnes*, 349 Ark. 518, 525, 78 S.W.3d 730,733 (2002).

The appellant failed to obtain the necessary findings, and the circuit court's order is insufficient to enable our review of the denial of class certification. The burden is on the appellant to bring up a record sufficient to demonstrate reversible error. *Landers v. Stone*, 2016 Ark. 272, at 17, 496 S.W.3d 370, 381 (citing *Burdine v. Ark. Dep't of Fin. & Admin.*, 2010 Ark. 455, 379 S.W.3d 476); *Troutt v. Matchett*, 305 Ark. 474, 476, 808 S.W.2d 777, 778 (1991) (citing *SD Leasing, Inc. v. RNF Corp.*, 278 Ark. 530, 647 S.W.2d 447 (1983)). We do not presume that prejudice has resulted from a circuit court's error, and we will not reverse for error unless prejudice is demonstrated. *Caplener v. Bluebonnet Mill Co.*, 322 Ark. 751, 759, 911 S.W.2d 586, 591 (1995) (citations omitted). The failure to obtain a ruling was a sufficient basis under our law to affirm. However, another basis exists which also supports the circuit court's order.

The appellant's brief argues that the requirements of numerosity, commonality, and typicality were met. However, the appellant did not address adequacy, predominance, or superiority. When a circuit court bases its decision on more than one independent ground, as it did here when it denied the motion, and the appellant challenges fewer than all those grounds on appeal, our case law requires that we affirm without addressing any of the grounds. *Jones v. Miller*, 2017 Ark. 190, at 4–5, 520 S.W.3d 253, 256 (citing *Evangelical Lutheran Good Samaritan Soc'y v. Kolesar*, 2014 Ark. 279, at 6–7; *Duke v. Shinpaugh*, 375 Ark. 358, 290 S.W.3d 591 (2009); *Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005);

14

*Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d (1989)).

The appellant failed to bring up a record sufficient to enable review or show reversible error and she only made arguments for reversal regarding three of the six elements of class certification. This court should therefore affirm. *Id.* While the majority dedicates a good four inches at the bottom of a page of its majority opinion in the form of a footnote, the majority overlooks the language of the circuit court's order. The circuit court's order does not state that the motion for class certification is denied based on Presidential's objections. Instead, it states that it "reviewed all pleadings, Exhibits and Briefs filed by [sic] the parties and finds" that the motion for class certification is denied. *Iura novit curia* means that the circuit court has never been relegated to only the arguments of the parties. Pursuant to this doctrine, courts have known and applied the law to cases for centuries. Rather than provide an argument to this court for error on all prongs of class certification, the appellant chose to make an issue out of only three of the six—as if Presidential's failure to object to three prongs of class-certification requirements limited the circuit court's ability to know the law and apply it.

The majority gives no reasoning to support its break with *stare decisis* as to two different and well-established principles of law. *Macklin v. Ark. Dep't of Hum. Servs.*, 2021 Ark. 151, at 13, 624 S.W.3d 869, 876 (Wood, J., dissenting) ("While some members of the majority have recently declared *stare decisis* sacrosanct, they have no problem overturning [precedent] *sub silencio*."); *Edwards v. Thomas*, 2021 Ark. 140, at 23, 625 S.W.3d 226, 238;

(Womack, J., concurring in part) ("*Stare decisis* is an important legal principle that should not be taken lightly."); *Collins v. State*, 2021 Ark. 80, at 5 (Kemp, C.J., dissenting) ("The majority fails to adhere to the doctrine of *stare decisis* by refusing to follow this court's precedent . . . ."). Our case law supports an affirmance of the circuit court's order and, because the majority breaks with precedent, I respectfully dissent.

*Corey D. McGaha PLLC*, by: *Corey D. McGaha*; and *Turner and Turner, P.A.*, by: *Todd M. Turner* and *Dan O. Turner*, for appellant.

One brief only.